IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PPC BROADBAND, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> AMPHENOL CORPORATION and TIMES ) <br> FIBER COMMUNICATIONS, INC., ) <br> ) <br> Defendants. ) | C.A. No. _____ <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff PPC Broadband, Inc. ("PPC"), by and through its undersigned counsel, hereby files the following Complaint against Defendants Amphenol Corporation and Times Fiber Communications, Inc. (collectively, "Defendants"), and alleges as follows:

## NATURE OF ACTION

1.  This action for patent infringement, brought under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*, seeks relief arising out of Defendants' infringement of U.S. Patent Nos. 9,225,083 (the "'083 Patent"), 10,038,284 (the "'284 Patent"), 10,446,983 (the "'983 Patent"), and 10,965,063 (the "'063 Patent") (collectively, the "Patents-in-Suit").

2.  PPC is the owner of the Patents-in-Suit.

3.  PPC asserts infringement of all of the Patents-in-Suits against Defendants for their unauthorized making, using, offering to sell, selling, and/or importing of coaxial cable connector products with Defendants' so-called "Quickshield® Ground Feature," including without limitation, bulk connectors, installation kits and other products containing such connectors (the "Accused Products").

## THE PARTIES

4. PPC is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 6176 East Molloy Road, East Syracuse, New York.

5. Amphenol Corporation ("Amphenol") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 358 Hall Avenue, Wallingford, Connecticut 06492.

6. Times Fiber Communications, Inc. ("Times Fiber") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 358 Hall Avenue, Wallingford, Connecticut 06492. Upon information and belief, Times Fiber is a wholly owned subsidiary of Amphenol.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over the asserted claims pursuant to 28 U.S.C. §§ 1331 and 1338, and 35 U.S.C. § 281.

8. This Court has personal jurisdiction over Amphenol because Amphenol is a Delaware corporation, because Amphenol has designated an agent in Delaware for service of process, and/or because Amphenol has been conducting and/or is presently conducting business in the District of Delaware on a regular basis.

9. This Court has personal jurisdiction over Times Fiber because Times Fiber is a Delaware corporation, because Times Fiber has designated an agent in Delaware for service of process, and/or because Times Fiber has been conducting and/or is presently conducting business in the District of Delaware on a regular basis.

10. In addition, this Court has personal jurisdiction over Defendants because Defendants have knowingly and actively engaged in acts that have infringed and will infringe the claims of the Patents-in-Suit in the District of Delaware.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1400.  Both Amphenol and Times Fiber are incorporated in Delaware, and therefore reside in Delaware for the purposes of the statute.

### **FACTUAL ALLEGATIONS**

#### *Background*

12.     PPC is a worldwide leader in the design and manufacture of products for the cable and telecommunication industries.  PPC invests a substantial amount of capital in product development and improvement to maintain its position as a leading producer of innovative connective technology products.  As a result of this investment, PPC has hundreds of issued U.S. Patents, and has an established track record of strictly enforcing its patents against competitors, including against the Defendants.

13.     Upon information and belief, both Defendants use, import, offer for sale, and/or sell the Accused Products in Delaware and elsewhere in the United States.  Such use, importation, offers for sale, and/or sale the Accused Products is in direct competition with PPC's connector products.

#### *Patents-in-Suit*

14.     The Patents-in-Suit claim priority to U.S. patent application Serial No. 10/997,218, filed on Nov. 24, 2004, which was published as U.S. Patent Application Publication No. US2006/0110977.

15.     The '083 Patent was filed on October 29, 2014 and issued on December 29, 2015.  The '083 Patent is attached hereto as Exhibit A.

16.     The '284 Patent was filed on February 13, 2017 and issued on July 31, 2018.  The '284 Patent is attached hereto as Exhibit B.

17. The '983 Patent was filed on July 31, 2018 and issued on October 15, 2019. The '983 Patent is attached hereto as Exhibit C.

18. The '063 Patent was filed on October 15, 2019 and issued on March 30, 2021. The '063 Patent is attached hereto as Exhibit D.

19. PPC is the sole owner of all right, title, and interest in the Patents-in-Suit, including the right to enforce the Patents-in-Suit.

20. PPC has not licensed Defendants to practice the Patents-in-Suit, and Defendants have no right or authority to license others to practice the Patents-in-Suit.

21. The Patents-in-Suit address a long-standing problem in the cable and telecommunications industries. A significant cost driver for a cable television and high-speed internet service providers is the cost of having to send technicians to customers' homes and business to address service interruptions. One of the most common problems these technicians find once on site is that the coaxial cable connectors are loose. When connectors are loose the ground path through the metal components of the connector to the outer conductor of the coaxial cable can become broken or unstable as the components can separate as the cable or the equipment is moved. When this happens, service is degraded or lost altogether, thus necessitating a service call by a technician.

22. As the Patents-in-Suit explain in their respective specifications: "[t]o help prevent the introduction of electromagnetic interference, coaxial cables are provided with an outer conductive shield. In an attempt to further screen ingress of environmental noise, typical connectors are generally configured to contact with and electrically extend the conductive shield of attached coaxial cables. Moreover, electromagnetic noise can be problematic when it is introduced via the connective juncture between an interface port and a connector. Such

problematic noise interference is disruptive where an electromagnetic buffer is not provided by an adequate electrical and/or physical interface between the port and the connector. Weathering also creates interference problems when metallic components corrode, deteriorate or become galvanically incompatible thereby resulting in intermittent contact and poor electromagnetic shielding . . ." and that "[an] . . . aspect [of the invention] relates to for a method for electrically coupling a coaxial cable and a connector, the coaxial cable having a center conductor surrounded by a dielectric, the dielectric being surrounded by a conductive grounding shield, the conductive grounding shield being surrounded by a protective outer jacket, said method comprising providing a connector, wherein the connector includes a connector body, a coupling member, and a conductive member electrically coupling and physically sealing the connector body and the coupling member, fixedly attaching the coaxial cable to the connector, and completing an electromagnetic shield by threading the nut onto a conductive interface port." (*E.g.*, '083 Patent, Col. 1, lines 46-60; Col. 2, line 59 to Col. 3, line 3.)

23. Although the specific scope of the invention is delineated by the various elements in the claims, as illustrated in the figure below, as a general matter the Patents-in-Suit address this problem by using a conductive grounding element (orange) to maintain an electrical path between a conductive coupler or nut (green) and a conductive body (red) even when the connector is only loosely attached to a port thereby allowing the components of the connector to separate out of electrical contact with one another. Because the conductive body (red) is in electrical contact with the conductive post (yellow), which in turn is in electrical contact with the outer conductor of the coaxial cable (gray), the conductive grounding element (orange) ensures that a ground path exists through the connector to the outer conductor (gray) of the coaxial cable.



### *The Accused Products*

24. The Accused Products are a line of products that include, without limitation, bulk connectors, installation kits and other products, that include connectors with what the Defendants call the "Quickshield® Ground Feature," which is in reference to the "conductive grounding element" labeled in the figure below (orange) and the fact that this component provides a ground path through the connector even when it is loose on a port.



25. On information and belief, a non-exhaustive list of connector model numbers includes, without limitation, TFC-QC2QS-11U-3MP, TFC-QC2QS-59U-3, TFC-QC2QS-H59-3, T59B77-QC2TQS-200CMW, T6V77-QC2QS-006, T6V77-QS2F-I18C, QC2QS-H, SLX-6C, TFC-QC2QS-06U-3LC, TFC-QC2QS-59U-3LC, T6V77SX-QS2T-006, T6SX77-QC2CTQS-06FC1, T6V77-QC4XTQS-010-VS, T6V77-QC2T-006, TFC-QC2TQS-06U-3L, T6V77-QC2TQSL-006W, and Q6V64-PQC2-006.

### Defendants' Knowledge of the Patents-in-Suit

26. On information and belief, Defendants are sophisticated companies in the industry that keep appraised of relevant patents (either alone or through the actions of its related companies).

27. The Defendants have been aware of the invention disclosed in the Patents-in-Suit at least since 2014 when, in connection with claim construction briefing in earlier litigation between the parties, Times Fiber submitted and expressly relied on IPR documents that discussed in detail U.S. Patent Application Publication No. US2006/0110977, which was the publication of the earliest priority application leading to the Patents-in-Suit.

28. In fact, Defendants were aware of the invention disclosed in the Patents-in-Suit even before their express reliance on the IPR documents during litigation in 2014. For example, in 2011, Amphenol filed a Mexican patent application MX2013004718A in which it disclosed as prior art U.S. Patent Application Publication No. US2006/0110977, which again was the publication of the earliest priority application leading to the Patents-in-Suit. Similarly, in 2013, another Amphenol subsidiary called Holland Electronics LLC, was granted U.S. Patent No. 8,376,769, which cited as prior art the earliest issued patent in the family of the Patents-in-Suit, U.S. Patent No. 7,828,595, as well as a later issued patent in the family of the Patents-in-Suit, U.S.

Patent No. 8,157,589. On information and belief, U.S. Patent No. 7,828,595 was cited by the applicant, whereas U.S. Patent No. 8,157,589 was cited by the examiner.

29. Given the litigation history between the parties along with PPC's well known strict enforcement of its patents, on information and belief, the Defendants have kept apprised of the developments in the family to which the Patents-in-Suit belong. Failure to do so would have been irresponsible under the circumstances and would have amounted to willful blindness.

30. In light of their knowledge of the publication of the earliest priority application leading to the Patents-in-Suit, U.S. Patent No. 7,828,595, and U.S. Patent No. 8,157,589, and given the litigation history between the parties, along with PPC's well known track record of strict enforcement of its patent rights, the Defendants, on information and belief, knew or should have known of each of the Patents-in-Suit on or about the date each such patent issued, and knew or should have known that their manufacture, use, importation, offer for sale, and/or sale of the Accused Products infringed each of the Patents-in-Suit on or about the time each such patent issued and/or on or about the time the Defendants made, used, imported, offered for sale and/or sold the Accused Products.

## **COUNT I**
### (*Infringement of the '083 Patent*)

31. PPC repeats and reasserts all of the foregoing allegations as if they were stated in full herein.

32. Defendants have directly infringed and continue to directly infringe at least Claim 1 of the '083 Patent, within the meaning of 35 U.S.C. § 271(a) and either literally or under the doctrine of equivalents, by using, selling, offering for sale, and or importing the Accused Products in the United States, without license or authorization by PPC.

33. Claim 1 in the '083 Patent claims:

A coaxial cable connector for coupling an end of a coaxial cable, the coaxial cable having a center conductor surrounded by a dielectric, the dielectric being surrounded by a conductive grounding shield, the conductive grounding shield being surrounded by a protective outer jacket, the connector comprising:

a conductive body member including a forward body end portion and an opposing rearward body end portion, the rearward body end portion configured to receive a portion of the coaxial cable, the forward body end portion having a forward facing body portion that comprises a forwardmost surface of the conductive body member and a conductive member outer body contact portion of a surface extending at least partially in a radial direction when the connector is assembled;

a post member configured to engage the conductive body member, wherein the post member is not integral with the conductive body member, the post member having a forward end including a flange and a rearward end, the rearward end configured to be inserted into a portion of the coaxial cable around the dielectric and under at least a portion of the conductive grounding shield thereof to make electrical contact with the conductive grounding shield of the coaxial cable;

a conductive nut member configured to rotate relative to the post member and the conductive body member, the conductive nut member including a forward nut end portion configured to be coupled to an interface port, a rearward nut end portion, and an internal lip, the internal lip having a forward lip surface facing the forward nut end portion and a rearward lip surface facing the rearward nut end portion;

a conductive metal ring grounding member including a nut contact portion configured to be electrically coupled to the conductive nut member and a body contact portion configured to at least partially encircle a portion of the conductive body member and be electrically and physically coupled to the conductive member outer body contact portion of the conductive body member without contacting the forward facing body portion of the conductive body member so as to form a nut-body electrical circuit between the conductive nut member and the conductive member outer body contact portion of the conductive body member, extend electromagnetic shielding from the coaxial cable through the connector, and inhibit RF ingress into the connector when the connector is assembled;

wherein the flange of the post member is configured to electrically contact the internal lip of the conductive nut member so as to form a first electrical ground path between the post member and the conductive nut member, and wherein the conductive metal ring grounding member forms a second electrical ground path between the conductive body member and the conductive nut member when the connector is assembled; and

wherein the conductive metal ring grounding member is configured to maintain the second electrical ground path in an unbroken state, where the conductive metal ring

grounding member is in electrical contact with the conductive body member and the conductive nut member, even when the first electrical ground path is in a broken state, where the flange of the post member is not in electrical contact with the internal lip of the conductive nut member.

34. The figure below, which is representative of all of the Accused Products, shows the correspondence of the claim elements recited in Claim 1 of the '083 Patent to the components in the Accused Products.



35. The Accused Products include each of the elements of Claim 1 of the '083 Patent and the Defendants' manufacture, importation, use, offer for sale and/or sale of such products in the United States constitutes infringement of the '083 Patent.

36. The Defendants' infringement has caused and continues to cause PPC irreparable harm and damages in an amount to be proven at trial.

37. Upon information and belief, the Defendants' unlawful infringing activity will continue unless and until the Defendants are enjoined by this Court from further infringement, and, at least since the commencement of this suit, such infringement has been willful, deliberate, and

intentional. The Defendants' continuing infringement since the commencement of this suit will cause PPC further irreparable harm and damages, and entitle it to recover, among other things, treble damages, attorney's fees, and costs.

## COUNT II
### (*Infringement of the '284 Patent*)

38. PPC repeats and reasserts all of the foregoing allegations as if they were stated in full herein.

39. Defendants have directly infringed and continue to directly infringe at least Claim 29 of the '284 Patent, within the meaning of 35 U.S.C. § 271(a) and either literally or under the doctrine of equivalents, by using, selling, offering for sale, and or importing the Accused Products in the United States, without license or authorization by PPC.

40. Claim 29 in the '284 Patent claims:

A connector comprising:

a body member having a central bore and a first grounding member contact surface;

a post disposed within the central bore and having an outwardly projecting flange at one end configured to produce a first portion of a mating interface, the post having tubular sleeve at the other end configured to mechanically and electrically engage the prepared end of the coaxial cable;

a conductive coupling element having an engagement surface at a first end configured to mechanically and electrically engage an interface port, a lip at a second end configured to produce a second portion of the mating interface, the first and second portions sliding along the mating interface to rotate about an elongate axis of the cable connector, and a second grounding member contact surface opposing the first grounding member contact surface; and

a conductive grounding member comprising a complaint ring disposed between the first and second grounding member contact surfaces, the conductive grounding member configured to produce an electrical path between the body member and the conductive coupling member.

41. The figure below, which is representative of all of the Accused Products, shows the correspondence of the claim elements recited in Claim 29 of the '284 Patent to the components in the Accused Products.



42. The Accused Products include each of the elements of Claim 29 of the '284 Patent and the Defendants' manufacture, importation, use, offer for sale and/or sale of such products in the United States constitutes infringement of the '284 Patent.

43. The Defendants' infringement has caused and continues to cause PPC irreparable harm and damages in an amount to be proven at trial.

44. Upon information and belief, the Defendants' unlawful infringing activity will continue unless and until the Defendants are enjoined by this Court from further infringement, and, at least since the commencement of this suit, such infringement has been willful, deliberate, and intentional. The Defendants' continuing infringement since the commencement of this suit will

cause PPC further irreparable harm and damages, and entitle it to recover, among other things, treble damages, attorney's fees, and costs.

## COUNT III
### (*Infringement of the '983 Patent*)

45. PPC repeats and reasserts all of the foregoing allegations as if they were stated in full herein.

46. Defendants have directly infringed and continue to directly infringe at least Claim 9 of the '983 Patent, within the meaning of 35 U.S.C. § 271(a) and either literally or under the doctrine of equivalents, by using, selling, offering for sale, and or importing the Accused Products in the United States, without license or authorization by PPC.

47. Claim 9 in the '983 Patent claims:

A connector for coupling a prepared end of a coaxial cable to an interface port, the connector comprising:

a body portion having a central bore and a first grounding member contact surface;

a post portion disposed within the central bore and configured to mechanically and electrically engage the prepared end of the coaxial cable;

a conductive coupling portion having an engagement surface at a first end configured to mechanically and electrically engage an interface port, and a second grounding member contact surface opposing the first grounding member contact surface; and

a conductive grounding portion configured to produce an electrical path between the body portion and the conductive coupling portion when the engagement surface of the coupling portion loosens relative to the interface port.

48. The figure below, which is representative of all of the Accused Products, shows the correspondence of the claim elements recited in Claim 9 of the '983 Patent to the components in the Accused Products.



49. The Accused Products include each of the elements of Claim 9 of the '983 Patent and the Defendants' manufacture, importation, use, offer for sale and/or sale of such products in the United States constitutes infringement of the '983 Patent.

50. The Defendants' infringement has caused and continues to cause PPC irreparable harm and damages in an amount to be proven at trial.

51. Upon information and belief, the Defendants' unlawful infringing activity will continue unless and until the Defendants are enjoined by this Court from further infringement, and, at least since the commencement of this suit, such infringement has been willful, deliberate, and intentional. The Defendants' continuing infringement since the commencement of this suit will cause PPC further irreparable harm and damages, and entitle it to recover, among other things, treble damages, attorney's fees, and costs.

## COUNT IV
### (*Infringement of the '063 Patent*)

52. PPC repeats and reasserts all of the foregoing allegations as if they were stated in full herein.

53. Defendants have directly infringed and continue to directly infringe at least Claim 1 of the '063 Patent, within the meaning of 35 U.S.C. § 271(a) and either literally or under the doctrine of equivalents, by using, selling, offering for sale, and or importing the Accused Products in the United States, without license or authorization by PPC.

54. Claim 1 in the '063 Patent claims:

A connector comprising:

a body portion having a first grounding member contact surface;

a post portion disposed within the body portion and having a flange at a first end configured to provide a first portion of a mating interface, the post portion having a second end configured to mechanically and electrically engage a prepared end of a coaxial cable;

a conductive coupling portion having an engagement surface at a first end configured to mechanically and electrically engage an interface port, a lip at a second end configured to provide a second portion of the mating interface, the first and second portions being configured to slide along the mating interface to rotate about an elongate axis of the cable connector, and a second grounding member contact surface opposing the first grounding member contact surface; and

a conductive grounding portion comprising a compliant ring between the first and second grounding member contact surfaces, the conducting grounding portion being configured to provide an electrical path between the body portion and the conductive coupling portion.

55. The figure below, which is representative of all of the Accused Products, shows the correspondence of the claim elements recited in Claim 1 of the '063 Patent to the components in the Accused Products.



56. The Accused Products include each of the elements of Claim 1 of the '063 Patent and the Defendants' manufacture, importation, use, offer for sale and/or sale of such products in the United States constitutes infringement of the '063 Patent.

57. The Defendants' infringement has caused and continues to cause PPC irreparable harm and damages in an amount to be proven at trial.

58. Upon information and belief, the Defendants' unlawful infringing activity will continue unless and until the Defendants are enjoined by this Court from further infringement, and, at least since the commencement of this suit, such infringement has been willful, deliberate, and intentional.  The Defendants' continuing infringement since the commencement of this suit will cause PPC further irreparable harm and damages, and entitle it to recover, among other things, treble damages, attorney's fees, and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, PPC prays for judgment in its favor and against the Defendants, collectively and individually, as follows:

A. Entry of judgment that the Defendants have infringed one or more claims of the Patents-in-Suit;

B. Entry of judgment that preliminarily and/or permanently enjoins the Defendants and their representatives, assigns or successors, or any subsidiaries, parents, divisions, agents, servants, employees thereof, and/or those in privity with Defendants from infringing the Patents-in-Suit;

C. An award of compensatory damages for PPC as a result of infringement, as provided in 35 U.S.C. § 284, the extent of which will be determined at trial, but in no event less than a reasonable royalty, together with interest and costs;

D. A determination that the Defendants' acts of infringement of one or more claims of the Patents-in-Suit have been, and continue to be, egregious and/or willful, and that PPC is entitled to an award of enhanced damages of up to three times the amount of actual damages pursuant to 35 U.S.C. § 284;

E. A determination that, pursuant to 35 U.S.C. § 285, this is an exceptional case and that PPC be awarded its reasonable attorney's fees;

F. An award of interest on any judgment rendered in this action;

G. An award of PPC's costs in this action; and

H. Such other and further relief as is just and proper.

## JURY DEMAND

PPC demands a trial by jury on all issues so triable.

Dated: May 6, 2021

*Of Counsel:*

BARCLAY DAMON LLP
Douglas J. Nash
John D. Cook
Barclay Damon Tower
125 East Jefferson Street
Syracuse, New York 13202
(315) 425-2700
dnash@barclaydamon.com
jcook@barclaydamon.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ Pilar G. Kraman

Pilar G. Kraman (#5199)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
(302) 571-6600
pkraman@ycst.com

*Attorneys for PPC Broadband, Inc.*